# EXHIBIT D

**FILED**

SAN DIEGO SUPERIOR COURT

APR 11 2006

CLERK OF THE SUPERIOR COURT

BY _____ D. ZOLEZZI

## THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SAN DIEGO

IN THE MATTER OF THE APPLICATION OF:   )   HC 14494 (6th Petition)
  )   CR 95364
  )
PABLO AGRIO   )   ORDER DENYING PETITION FOR WRIT
(CDC No. E-17284),   )   OF HABEAS CORPUS
  )
  )
                Petitioner.   )
  )

AFTER REVIEWING THIS SIXTH PETITION FOR WRIT OF HABEAS CORPUS AND THE PREVIOUS HABEAS CORPUS PETITIONS AND THE ORDERS DENYING THEM IN THE ABOVE REFERENCED MATTER, THE COURT FINDS AS FOLLOWS:

On April 7, 1989, a jury convicted Petitioner of second-degree murder. The jury also found true the allegation that Petitioner personally used a firearm in the commission of the offense. Petitioner was sentenced to an indeterminate term of 15 years to life, plus an additional and consecutive two years for the firearm enhancement. The judgment was affirmed on appeal. (Case No. D010237.) Petitioner has sought habeas corpus relief on multiple occasions in this court and in the Courts of Appeal. These requests have repeatedly been denied.

On October 29, 2004, Petitioner filed his fifth petition for habeas corpus relief in this court, challenging the May 18, 2004 decision of the Board of Prison Terms (now known as the Board of Parole Hearings, hereinafter referred to as BPH) finding him unsuitable for parole. More specifically, Petitioner contended the BPH's finding that he would pose an unreasonable

1  risk of danger to society or a threat to public safety if released conflicts with all the evidence

2  presented at the hearing, thereby violating his Constitutional liberty interests and due process

3  rights.

4     That Petition was denied because the BPH's determination that Petitioner was not yet

5  suitable for parole was based on its finding that he would pose an unreasonable risk of danger to

6  society or a threat to public safety if released from prison. This finding was primarily based on

7  the nature of the commitment offense and the manner in which it was carried out, as well as

8  ongoing concern with Petitioner's ability to control his temper in stressful situations. "The nature

9  of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." In Re

10 Rosenkrantz (2002) 29 Cal.4th 616, 682. The Rosenkrantz Court also said: "We uphold that

11 decision [of the BPH] if it is supported by 'some evidence' based upon the factors specified by

12 statute and regulation." Id., at 658. "Some evidence" supported this finding by the BPH in this

13 case after the hearing in May, 2004.

14    Petitioner has now filed his sixth habeas corpus petition with this Court on the ground

15 that the BPH illegally used Penal Code § 3041(b) at his most recent parole suitability hearing on

16 December 6, 2005, to find him unsuitable for parole because he claims there "is not a modicum

17 of evidence" that he is a current threat to society or otherwise unsuitable for parole. Petitioner

18 believes that this decision against him was arbitrary and capricious and that it violated his state

19 and federal due process rights.

20    Actually, a review of the material Petitioner has provided (and not provided) with this

21 most current habeas corpus petition shows that his contention that there "is not a modicum of

22 evidence" is erroneous.

23    First, (and as discussed more completely below), Petitioner failed to provide a full and

24 complete copy of the transcript from the December 6th parole suitability hearing. There is no

25 explanation provided as to why the Court was not afforded the complete document. Moreover,

26 Petitioner has also attached a copy of a transcript of a deposition of a Michael Brady that

27 apparently was taken for a habeas corpus petition brought by another defendant in another case

28 in another county, again with no explanation as to why it is relevant to the present Petitioner's

1    case. For this reason alone (failure to provide the full transcript), this Court could deny this

2    Petition because it has not been provided with all the facts upon which it could base a fully

3    informed decision.

4        However, Petitioner has provided the complete eight and one-half pages of the BPH's

5    final decision after the December 6, 2005, suitability hearing. A careful review of those pages,

6    plus the hearing transcript pages Petitioner did provide, show that there was indeed, more than a

7    modicum of evidence that would qualify the finding of "some evidence" necessary for this Court

8    to deny this Petition.

9        As in the past, the BPH noted that the underlying murder was cruel and callous with

10   absolutely no motive. *However*, before the rendering of the decision could continue, Petitioner's

11   counsel stated that Petitioner would like to leave the room and that the reading of the decision

12   could continue with just the attorney present. (Transcript, 99:11-13).

13       Immediately after Petitioner left the room, the BPH stated the "several reasons as to why

14   we determine three years" before Petitioner will have his next suitability hearing.

15       In summary, it appears to this Court that the BPH believed Petitioner was a current threat

16   to society because Petitioner was being deceptive (Transcript 100:13-14) with a "selective and

17   minimized (sic) memory." (Transcript 105:20-21)

18       Specifically, the BPH was very concerned because Petitioner continues to minimize the

19   underlying crime. The commissioners believed Petitioner was "attempting to wordsmith this

20   crime" by changing his description of it from an accidental to an unintentional act. The BPH

21   believed that those terms were "very far apart." (Transcript, 99:19-24) The panel was also

22   concerned that Petitioner's version that he was "upset" when he committed the murder was a

23   considerable downsizing of the words "angry and infuriated," "which makes him look a little

24   better[,] a little nicer." (Transcript 99:24-26, 100:1-2).

25       The commissioners did not believe Petitioner had yet taken responsibility for his crime,

26   and they were particularly concerned that he had not been completely honest with his current

27   wife regarding his plans to live with another woman if he was forced to serve parole in San

28   Diego County. That was mentioned at least three separate times in the eight and one-half page

1  decision (Transcript 100:6-14, 103:5-26 – 104:1-2, and 105:16-21).

2      The BPH believed that Petitioner was still attempting to place some of the blame for the

3  murder back on the victim and the claim that he never battered her before the murder was a total

4  lie. (Transcript 100:14-24). This belief apparently was strengthened by Petitioner's behavior

5  when the decision was being rendered: "And I think there's something to say about the fact that

6  he didn't want to hear the truth here and didn't want to face the facts and left the hearing

7  prematurely." (Transcript 100:26, 101:1-3).

8      As noted above, Petitioner was selective in which transcript pages he provided to this

9  Court with the present Petition. While that in itself may mean nothing, taken with the totality of

10  the reasons the BPH believed Petitioner was not suitable for parole because he was a risk

11  because he was deceptive, only exemplifies the perception the BPH had of the Petitioner.

12      For instance, there apparently was some discussion in the omitted pages about the culture

13  of a Latin family "where a man is the boss of the house and ordinarily the wife jumps at the snap

14  of a finger." (Transcript 101:21-23) What is key is that the commissioner then states: "He

15  [Petitioner] states that no matter how much time he had to do, there's no guarantee that he would

16  not ultimately wind up in a similar position under similar circumstances." (Transcript 101:26.

17  102:1-3)

18      The BPH was very concerned about this and stated it was one of the reasons for the three-

19  year period before suitability would be re-visited. The commissioner also was concerned that a

20  psychiatric evaluation was made invalid because Petitioner withheld valuable information.

21  (Transcript 102:24-26,103:1-5). Because Petitioner failed to provide the full transcript, it is

22  impossible to know if this withholding was something Petitioner did at this hearing or at a

23  previous hearing.

24      Thus, taken as a whole, a review of what was (and what was **not**) presented with this

25  Petition shows that there was more than "some evidence" that Petitioner was deceptive and still

26  unable or unwilling to accept full responsibility for the murder and that, despite all of the good

27  things that Petitioner has accomplished during this incarceration, he still is a current risk to

28  society and should not be paroled at this time.

Petitioner cites often to a recent case that was decided in the local Fourth District Court of Appeal as being very similar and on point with his case: In Re Shaputis (2005) 135 Cal.App.4[th] 217. While in many ways Shaputis is *not* on point, the law cited therein definitely is relevant and pertinent: "The "some evidence" standard is "extremely deferential" and requires only " 'a modicum of evidence.' " (Rosenkrantz, supra, 29 Cal.4th at pp. 664-665.) A court may not vacate an administrative decision subject to the "some evidence" review simply because it disagrees with the BPT's assessment. (Id. at p. 679.) The decision must be "devoid of a factual basis" to be overturned. (Id. at p. 658.) Because judicial review of a parole denial is to ensure that a decision of the BPT is not arbitrary and capricious, thereby depriving the prisoner of due process of law, "the court may inquire only whether some evidence in the record before the [BPT] supports the decision to deny parole, based upon the factors specified by statute and regulation." (Id. at pp. 657-658.)." Shaputis 135 Cal.App.4th, at 226.

As noted in detail above, the BPH decision in this present case was **not** "devoid of a factual basis," so it cannot be overturned.

The local appellate court noted at the end of its decision that "Shaputis exhibited no violent tendencies toward anyone other than his wife and one of his daughters, and the violence he demonstrated was intertwined with his alcohol problem. The only evidence before the BPT was that Shaputis had more than a decade of demonstrated commitment to remaining sober, and there was not a scintilla of violence in his nearly two decades of incarceration. Accordingly, the BPT's conclusion Shaputis remained a danger to society, to the extent it was premised on a former lifestyle that all of the evidence showed was a historical relic, is so lacking in any medical, psychological or behavioral evidentiary support that it is arbitrary and capricious, within the deferential standards articulated by Rosenkrantz, supra, 29 Cal.4th 616." Id., at 231-232.

Again, as detailed above, there are two differences with the present case: (1) The present Petitioner failed to provide all the evidence the BPH heard, and (2) the BPH clearly articulated reasons why they believed Petitioner was deceptive and thus, impliedly under all the circumstances of this case, was a current risk to society.

1    Interestingly, in Justice Benke's dissent, she notes something that is on point to the

2    present case: "Instead, the court held the board may decline to set a parole date in an individual

3    case "if it concludes, on relevant grounds with support in the evidence, that the grant of a parole

4    date is premature for reasons of public safety."" Id., at 234. This is exactly what and why this

5    present Court is making a similar decision.

6    Finally, the same dissent sets forth what this Court adopts as an underlying reason for

7    declining to overturn the BPH's decision of December 6, 2005: "Clearly, if an inmate is not

8    suitable for parole because considerations of public safety demand a more lengthy period of

9    incarceration, the Board of Prison Terms is not required to set a release date. Our review of the

10    board's decisions is highly deferential and only a modicum of evidence is needed to support the

11    board's decision. (In re Rosenkrantz, supra, 29 Cal.4th at p. 667.) This deference is based on two

12    important considerations: first, we are reviewing the discretionary actions of a separate branch of

13    government; and second, the board has far greater expertise and experience in dealing with

14    determining public safety than do the courts."

15    Therefore, for all of the above-stated reasons, this sixth Petition is DENIED.

16    A copy of this Order shall be served upon Petitioner and the San Diego Office of the

17    District Attorney, Appellate Division.

18    IT IS SO ORDERED.

19    DATED: _11 Apr 06_

CHRISTINE V. PATE
JUDGE OF THE SUPERIOR COURT

21    I hereby certify that the foregoing instrument is a
full, true & correct copy of the original on file in
22    this office, that said document has not been revoked,
annulled or set aside, and it is in full force and effect.
23    Attest: APR 11 2006

Clerk of the Superior Court of the State
24    of California, in and for the County of San Diego

25    By_____Deputy

26

27

28

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
☒ COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA 92101-3814
☐ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827
☐ FAMILY COURT, 1501 6TH AVE., SAN DIEGO, CA 92101-3296
☐ MADGE BRADLEY BLDG., 1409 4TH AVE., SAN DIEGO, CA 92101-3105
☐ KEARNY MESA BRANCH, 8950 CLAIREMONT MESA BLVD., SAN DIEGO, CA 92123-1187
☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6643
☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941
☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200
☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649
☐ JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123-2792
☐ JUVENILE COURT, 1701 MISSION AVE., OCEANSIDE, CA 92054-7102

*FOR COURT USE ONLY*

F I L E D
Clerk of the Superior Court

APR 1 3 2006

By: _____ Deputy

PLAINTIFF(S)/PETITIONER(S)

The People of The State of California

DEFENDANT(S)/RESPONDENT(S)

PABLO AGRIO

JUDGE: _____

DEPT: _____

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**
**(CCP 1013a(4))**

CASE NUMBER

HC14494
CR95364

I, **STEPHEN LOVE**, certify that:  I am not a party to the above-entitled case; that on the date shown below, I served the following document(s):
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

on the parties shown below by placing a true copy in a separate envelope, addressed as shown below; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at:    ☒ San Diego   ☐ Vista   ☐ El Cajon   ☐ Chula Vista   ☐ Oceanside   ☐ Ramona, California.

| NAME | ADDRESS |
|------|---------|
| PABLO AGRIO | P.O. BOX 689<br>Z-130U<br>SOLEDAD, CA  93960-0689<br>#E17284 |
| SAN DIEGO COUNTY DISTRICT ATTORNEY'S OFFICE<br>APPELLATE DIVISION | P.O. BOX 121011<br>SAN DIEGO, CA 92112-1011 |

STEPHEN LOVE
CLERK OF THE SUPERIOR COURT

By _____, Deputy

Date: 04/13/06 _____

Name _____ PABLO AGRIO _____

Address _____ P.O. BOX 689   Z-130U _____

_____ SOLEDAD, CA 93960-0689 _____

_____

CDC or ID Number _____ E17284 _____

F I L E D

Clerk of the Superior Court

FEB 1 7 2006

By: _____ Deputy

SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

*(Court)*

WRIT GRANTED/DENIED
DATE 04-11-06

PABLO AGRIO,

Petitioner

vs.

CA BOARD OF PRISON TERMS

Respondent

## PETITION FOR WRIT OF HABEAS CORPUS

No. HC 14494   6th Petition

*(To be supplied by the Clerk of the Court)*

CR 95364

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

| | |
|---|---|
| ☐ A conviction | ☒ Parole |
| ☐ A sentence | ☐ Credits |
| ☐ Jail or prison conditions | ☐ Prison discipline |
| ☐ Other (specify): _____ | |

1. Your name: **PABLO AGRIO**

2. Where are you incarcerated? **CORRECTIONAL TRAINING FACILITY – SOLEDAD**

3. Why are you in custody? ☒ Criminal Conviction   ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   **SECOND DEGREE MURDER WITH USE OF A WEAPON**

   b. Penal or other code sections: **187 PC; 12055 PC**

   c. Name and location of sentencing or committing court: **SAN DIEGO SUPERIOR COURT**

   d. Case number: _____

   e. Date convicted or committed: _____

   f. Date sentenced: _____

   g. Length of sentence: **17 YEARS TO LIFE**

   h. When do you expect to be released? _____

   i. Were you represented by counsel in the trial court? ☒ Yes.   ☐ No.  If yes, state the attorney's name and address:

4. What was the LAST plea you entered? *(check one)*

   ☒ Not guilty   ☐ Guilty   ☐ Nolo Contendere   ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   ☒ Jury   ☐ Judge without a jury   ☐ Submitted on transcript   ☐ Awaiting trial

6.  GROUNDS FOR RELIEF
    **Ground 1:**  State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement."  *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four.  For additional grounds, make copies of page four and number the additional grounds in order.)*

SEE ATTACHED

_____

_____

_____

_____

   a.  Supporting facts:
       Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

   b.  Supporting cases, rules, or other authority (optional):
       *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

_____

_____

_____

_____

7. **Ground 2** or **Ground** _____ *(if applicable)*:

SEE ATTACHED

a. Supporting facts:

b. Supporting cases, rules, or other authority:

8. Did you appeal from the conviction, sentence, or commitment?    ☐ Yes.    ☐ No.    If yes, give the following information:

  a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

_____

  b. Result: _____    c. Date of decision: _____

  d. Case number or citation of opinion, if known: _____

  e. Issues raised:   (1) _____

      (2) _____

      (3) _____

  f. Were you represented by counsel on appeal?    ☐ Yes.    ☐ No.   If yes, state the attorney's name and address, if known:

_____

9. Did you seek review in the California Supreme Court?   ☐ Yes.   ☐ No.    If yes, give the following information:

  a. Result: _____    b. Date of decision: _____

  c. Case number or citation of opinion, if known: _____

  d. Issues raised:   (1) _____

      (2) _____

      (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

_____

_____

11. Administrative Review:

  a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

_____

_____

_____

_____

_____

_____

_____

_____

  b. Did you seek the highest level of administrative review available?    ☐ Yes.    ☐ No.
  *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes. If yes, continue with number 13. ☐ No. If no, skip to number 15.

13. a. (1) Name of court: _____

    (2) Nature of proceeding (for example, "habeas corpus petition"): _____

    (3) Issues raised: (a) _____

            (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

            (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

_____

_____

16. Are you presently represented by counsel? ☐ Yes. ☐ No. If yes, state the attorney's name and address, if known:

_____

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☐ No. If yes, explain:

_____

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

_____

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: **2/14/06**

▶ _____
           SIGNATURE OF PETITIONER

1  PABLO AGRIO       E-17284
   P.O. BOX 689      ZW-130U
2  SOLEDAD, CA  93960-0689
        in pro per

3

4

5                 SUPERIOR COURT OF CALIFORNIA

6            IN AND FOR THE COUNTY OF SAN DIEGO

7

8

9  <u>In re AGRIO</u>                    )  Case No.: _____
      Petitioner,                     )
10                                     )  PETITION FOR WRIT OF HABEAS
          v.                          )  CORPUS
11                                     )
12 <u>A.P. KANE, WARDEN (A), et al,</u> )
      Respondent                      )
13                                     )
                                       )
14                                     )
                                       )
15                                     )
                                       )
16                                     )
                                       )
17 _____   )

18

19

20

21

22

23

24

25

26

27

28

                              1

# TABLE OF CONTENTS

| TITLE | PAGE |
|---|---|
| Cover | 1 |
| Table of Contents | 2 |
| Points and Authorities | 3 – 4 |
| Judicial MC-275 | 5 – 19 |
| Ground 1 | 7 – 14 |
| Ground 2 | 15 – 18 |
| Conclusion | 20 |
| Prayer for Relief | 21 |
| Proof of Service by Mail | 22 |
| Exhibit 'A' (Hearing Transcript 2005) | 23 – 130 |
| Exhibit 'B' (Memorandum-Psychological Reports) | 131 – 135 |
| Exhibit 'C' (Deposition of Michael Brady) | 136 – 138 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**AUTHORITY**                                                                                                   **PAGE**

## CONSTITUTIONAL AUTHORITIES

U.S. CONSTITUTION, AMENDMENT 7, 14                                          7, 8, 11, 12, 18, 19

CALIFORNIA CONSTITUTION, ARTICLE I, SECTIONS 7, 15          7, 8, 11, 12, 18, 19

## FEDERAL CASE LAW

Biggs v. Terhune, (2003 9th Cir.)                                                     7, 8, 10, 11, 12
334 F.3d 910
Greenholtz v. United States                                                              12
(1987) 100 Cal.3d 794.
McQuillion v. Ducan, (9th Cir.)                                                        7, 8
306 F.3d 895

## STATE CASE LAW

California v. Morales, (1975)                                                           18, 19
115 S.Ct. 1597
In re Capistran, (2003)                                                                  18, 19
107 Cal.App.4th 1299
In re Caswell, (10/10/01)                                                              18, 19
92 Cal.App.4th 1017
In re Deluna (2005)                                                                       14
126 Cal.App.4th 585
In re Jackson, (1985)                                                                   18, 19
39 Cal.App.3rd 464
In re Minnis,                                                                                8
7 Cal.3d at p. 647
In re Norman Morrall, (2002)                                                       7, 8, 10, 18, 19
102 Cal.App.4th 280
In re Edward Ramirez, (2001);                                                     7, 8, 11, 12, 18, 19
94 Cal.App.4th 549
In re Rodriguez,                                                                          18, 19
(1975) 14 C.3d 639
In re Rosenkrantz (2002)                                                            7, 8, 14
29 Cal.App.4th 659
In re Rosenkrantz,                                                                      18, 19
95 Cal.App.4th 358
In re George Scott                                                                       7, 10
119 Cal.App.4th
**In re Shaputis (2005)**                                                               **14**
**2005 DJDAR 14892, 4th District, Division 1**
In re Mark Smith, (2003)                                                              7
Cal.App.4th 343

1

2

## TABLE OF AUTHORITIES PAGE 2

**PENAL CODE**                                    **PAGE**

§ 3000(b)(1)                                      5

§ 3041(a)                                         10, 11

§ 3041(b)                                         5, 6

§ 3041.5                                          5, 6, 9

§ 3041.5(b)(2)                                    13

§ 5076.2                                          13


## CALIFORNIA CODE of REGULATIONS

**CCR SECTION**                                   **PAGE**

CCR § 2000(b) (48) [Good Cause]                   13, 14

CCR § 2000(b) (61) [Material Evidence]            13, 14

CCR § 2000(b) (89) [Relevant Evidence]            13, 14

CCR § 2400 et seq.                                13, 14

§ 2282(a)                                         8

§ 2402(a)                                         6

§ 2402(c)(1)(D)                                   8

§ 2403(c)                                         6, 9

§ 3375.2(7)(A)                                    8

1    Cover Page of MC-275 goes here

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1.      Page 2 of MC-275 goes here

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THE BOARD OF PRISON TERMS ILLEGALLY USED PENAL CODE SECTION 3041(b) [THE EXCEPTION] TO FIND PETITIONER UNSUITABLE FOR PAROLE. AS THERE IS NOT A MODICUM OF EVIDENCE THAT PETITIONER IS A <u>CURRENT</u> THREAT TO SOCIETY OR OTHERWISE UNSUITABLE FOR PAROLE THE DECISION WAS ARBITRARY AND CAPRICIOUS VIOLATING PETITIONER'S STATE AND FEDERAL DUE PROCESS RIGHTS.**

On DECEMBER 6, 2005, Petitioner PABLO AGRIO, E-17284 (hereinafter "Petitioner"), was provided a Life Term Parole Consideration Hearing before the Board of Prison Terms (hereinafter "Board", "BPT", or "Panel"); Please refer to Exhibit 'A' which is the Hearing Transcript (hereinafter "HT" or "Transcript"). Said Hearing was Petitioner's FOURTH parole suitability hearing. Petitioner's Minimum Eligible Parole Date (hereinafter "MEPD"), was APRIL 30, 2000.[1] The purpose of this Board hearing was for the setting of Petitioner's term uniformly [2] to his offense and for a finding of suitability for parole (See Penal Code § 3041.5; <u>In re Edward Ramirez</u>, 94 Cal.App.4th 541 (2001); <u>McQuillion v. Ducan</u>, (9th Cir.) 306 F.3d 895; <u>In re Norman Morrall</u>, (2002) 102 Cal.App.4th 280; <u>In re Rosenkrantz</u>, (2002) 29 Cal.App.4th 660; <u>In re Mark Smith</u>, (2003) Cal.App.4th 343; and the recent <u>Biggs v. Terhune</u>, (2003 9th Cir.) 334 F.3d 910).

The result of this Board hearing was an erroneous and unlawful finding of unsuitability and a release date was not set. Instead, Petitioner was given a three (3) year denial and did not appeal this decision through the administrative remedy because the Board has eliminated the BPT Appeals Unit and no longer allows for the filing of administrative appeals on BPT denials

---

1 – The Court of Appeal in <u>In re George Scott</u>, (2004) 119 Cal.App.4th 871, reaffirmed the rationale of the <u>Ramirez</u> and <u>Smith</u> Courts when it declared "...parole is the <u>rule</u>, rather than the exception, and conviction for second degree murder does not automatically render one unsuitable. (<u>In re Smith</u>, (2003) 114 Cal.App.4th 343, 366). <u>In re Ramirez</u>, supra, 94 Cal.App.4th 549 ...[a]ll violent crimes demonstrate the perpetrator's potential for posing a grave risk to public safety, yet parole is mandatory for violent felons serving determinate sentences. Penal Code § 3000 subd. (b)(1).) And the Legislature has clearly expressed its intent that when murders – who are the great majority of inmates serving indeterminate sentences – <u>approach their minimum eligible parole date, the Board shall normally set a parole release date</u>..." (id. at p. 570).

2. – The Court of Appeal on June 24, 2004, in <u>In re George Scott</u>, supra, 119 Cal.App.4th at 887 fn. 7, also reaffirmed the Legislative Intent of Uniform terms by stating: "The first two sentences of the DSL declare 'that the purpose of imprisonment for a crime is punishment' and that [t]his purpose is best served by terms proportionate to the seriousness of the offense with provisions for uniformity in the sentences of offenders committing the same offense under similar circumstances. (Penal Code § 1170, subd. (a)(1).) Nothing in the DSL or its legislative history suggests that legislative concern with uniformity was limited to those serving determinate terms. Penal Code § 3041 shows that this interest <u>does</u> extend to individuals such as [this Petitioner] who are serving indeterminate life terms. (Id., citing <u>Ramirez</u>, supra 94 Cal.App.4th at 559).

1  of parole for indeterminately sentenced prisoners such as Petitioner. Petitioner submits that the

2  Board's regulation, that is the California Code of Regulations (hereinafter "CCR"), § 2402(a)

3  **DEMANDS that the Board set a release date unless Petitioner CURRENTLY presents an**

4  **unreasonable risk of danger to the public.** Petitioner submits that the representing District

5  Attorney did not provide any new and/or additional evidence whatsoever that Petitioner is an

6  unreasonable risk of danger to the public or otherwise unsuitable for parole.

7     Additionally, Petitioner submits that the Board speaks in meaningless generalities and fails

8  to address the exact nature of Petitioner's CURRENT character. By not doing so, the Board

9  violated the intent and spirit of Penal Code (hereinafter "PC"), § 3041.5 [3] and In re Ramirez,

10  supra, which dictates that the Board shall normally set a parole release date. (citing Biggs v.

11  Terhune, supra).

12     The Court in Biggs, supra, held that the Board's continued use of the crime (or any other

13  unchanging circumstances) as a basis for denial of parole when Petitioner's Institutional

14  Behavior remains exemplary may be a violation of both State and Federal Due Process.

15     Since his incarceration, Petitioner has had no occurrence of serious or violent disciplinary

16  action, thus exemplifying himself as a model prisoner (even the DA acknowledged this).

17  Petitioner seeks acknowledgment of the facts that since 1989, there has been thereafter a

18  continuous sixteen (16) year history free of any disciplinary action or occurrence. Petitioner

19  submits that the Board's failure to uniformly measure his offense and set his term

20  proportionately to others similarly situated and to find him suitable for parole violates both

21  State and Federal due Process. Also, the current policy of the Board, which will be discussed

22  more fully infra, is the setting of a parole date which is all too often the exception rather than

23  the norm, and thus violates Petitioner's Liberty Interest that is present in a parole date; In re

24  Rosenkrantz, supra; McQuillion v. Ducan, supra; Biggs v. Terhune, supra. At the Petitioner's

25  board hearing the BPT relied solely on Petitioner's commitment offense and prior history to

26  3 – There is no evidence that the crime is "particularly egregious" to justify the use of the exception clause of PC
§ 3041(b); In re Norman Morrall, supra, the court concluded "[W]e agree that an inmate cannot be denied parole
27  simply on the type of offense he committed." (See also In re Minnis, 7 Cal.3d at p. 647). To the contrary, it falls
squarely in the Board's own proportionality matrix CCR § 2403(c) at axis B-II. Without post-conviction credits
28  Petitioner has served twenty two (22) years. Adding post conviction credits he has served twenty seven (27) plus
years, essentially reaching his matrix as required. There is no evidence that Petitioner is a current risk or threat to
society and the Board's conclusions are not supported by the record. (See Biggs, supra).

1    justify its unlawful finding of unsuitability. Beginning at page 98 of Exhibit 'A', the HT, the

2    Board stated:

3        "Now the panel's reviewed all the documents – all the information received from the

4        public and relied on the following circumstances in concluding that the prison is not

5        suitable for parole and would pose an unreasonable risk of danger to society or threat

6        to public safety if released from prison. We're going to deny your parole for three

7        years, sir, and I'm going to tell you why. The offense in this case was particularly

8        cruel and callous absolutely no motive. There was no reason for this offense to have

9        ever occurred. It was certainly carried out in a dispassionate manner. I have wouldn't

10       go as far to say it's an execution-style, sir. I would certainly say it's more than

11       unintentional act or more than an accidental death given your -- given your history as

12       a police officer, given your history as a Marine around firearm, I just find – I do not

13       understand how this could have happened. If there wasn't – without retrying this case

14       at all you are here for second degree murder. I think there was certainly a crime of

15       passion. We think it's a crime of passion." (HT 98/99 lines 7-26: 1-4)

16   In addition, and with regard to the Petitioner's suitability, the board erred in disregarding

17   Petitioner's Mental Health Evaluation which is supportive of release (please refer to HT, pg.

18   61 lines 5-27 line). Petitioner's Psychiatric Reports have been much instructive. Specifically,

19   Dr. M. Macomber, Ph.D., CTF-Soledad, Staff Psychologist, stated:

20       "Inmate AGRIO has remained entirely disciplinary free throughout his 15 years of

21       custody, which is very difficult to do. This shows excellent self-control and ability to

22       get along with others in a stressful environment. His potential for violence within the

23       institutional environment is definitely below average in comparison to other inmates.

24       Inmate AGRIO has matured. He no longer is driven by his perfectionist tendencies to

25       maintain control of his life. He has learned how to negotiate differences with others,

26       and come to positive resolutions of conflict. He has a good sense of concern and

27       empathy towards others." (See Exhibit 'A')

28   And under "Assessment of Dangerousness" Dr. Macomber stated:

"At this point in his life, his potential for violence in the unstructured setting of the community is definitely below average in comparison to other inmates. In comparison to the average citizen in the community, based upon his knowledge and experiences, his potential for violence is even lower than that." (Id., p. 3)

Additionally, the Board ignored that Petitioner has been deemed by the California Department of corrections a **Model** prisoner with A-1-A status, and **Not** a threat to society, and that Petitioner's crime is not "particularly egregious" (especially cruel and callous) by placing Petitioner in a Level II prison setting. [4]

Also, in the Life Prisoner Evaluation Report (hereinafter "LPER") attached as Exhibit 'C', Petitioner's Correctional Counselor, CC-I Taporco, states:

**"Considering the commitment offense, the writer believes AGRIO would probably pose a low degree of threat to the public at this time, if released from prison. This is based on that he has received two certificates in Vocational Computer Repair, as a legal assistant in Paralegal, and BA Degree in Criminal Justice, and a Juris Doctor in Law. AGRIO remained disciplinary free, and an active member of Alcoholic Anonymous." (Exhibit 'A')**

Again, in In re Norman G. Morrall, supra, the Court concluded; "A refusal to consider the particular circumstances relevant to an inmate's individual suitability for parole would be contrary to law." Moreover, the Court in Biggs, supra, addressed the Board's continued illegal use of the crime and/or prior history to justify a denial of parole:

**"... a continued reliance... on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation". (Biggs, supra, 334 F.3d at 917).**

---

4. California Code of Regulations, Title 15, section 3375.2 subd. (7)(A) states: "An inmate serving any life term shall not be housed in a Level I or II facility if any of the following case factors are present: The Commitment Offense involved... unusual violence...." And on June 24, 2004, the Court of Appeal in In re George Scott, supra, 119 Cal.App.4th at 892 fn. 11, found that the Board's regulations provide that even if the crime is "exceptionally callous" an inmate may be found suitable for parole. The Court declared that "Under the Board regulations, base terms for life prisoners are not calculated until after an inmate is deemed suitable for release. (§ 2282, subd. (a).) The regulations therefore contemplate that an inmate may be deemed suitable for release even though his offense demonstrated "exceptionally callous disregard for human suffering." (§ 2402, subd, (c)(1)(D).)" (Id)

In <u>Biggs</u>, supra, the appeal was pursuant to his initial suitability hearing. The Petitioner has now had **FOUR** Board hearings and submits that his most recent denial rests solely on the commitment offense, (as did his previous hearings in 1999, 2002, and 2004, included herein as Exhibit 'D"), and therefore violates both State and Federal Due Process. Most importantly, there is no evidence that the public safety requires a lengthier period of incarceration (please refer to PC § 3041(b), in relation to other instances of the same crime please refer to PC § 3041.5).

Petitioner submits that understanding and perspective of the crime is compelled by the Board's own proportionality matrix (please refer to CCR Division 2, § 2403(c). The matrix scale and rating of the more common and routine variations of murder appear to be a codification of when a crime of this nature can be more egregious than average.

Petitioner submits that his crime falls squarely in the matrix [category II, 17-18-19 years]. With post conviction credits, Petitioner has exceeded the maximum by close to TWO (2) years and without post conviction credit application, Petitioner has served his matrix. The Board fails in any attempt to substantiate why Petitioner's crime is so heinous as to require that Petitioner be exempted time and time again from the general rule that a parole date shall normally be set; please see <u>In re Ramirez</u>, supra, wherein the court states:

> "**The Board must weigh the inmate's criminal conduct not against ordinary social norms, but against other instances of the same crime or crimes. (<u>Ramirez</u>, supra, Cal.App.4[th] at p. 570).**

Petitioner submits that the record is devoid of the Board making such a comparison. Similarly, Petitioner's Psychiatric Report evidence, like <u>Biggs</u>, supra, is supportive of release; contrary to the Board's erroneous and specious findings (please see Exhibit 'A'). The court in <u>Biggs</u>, addressed the Board's illegal usage of needed therapy and other illegal reasons to justify a highly illegal denial. The Court concluded:

> "**The record in this case and the transcript of Biggs' hearing before the Board clearly show that <u>many of the conclusions and factors relied upon by the Board were devoid of evidentiary basis</u>." (<u>Biggs</u>, supra, 334 F.3d at p. 915)**

The Court in <u>Biggs</u>, supra, went on to warn the Board that while there was "some evidence" to use the crime as a basis for denial at his <u>initial</u> hearing, the board's continued use of the crime as a basis for continual denials would be a violation of Biggs Federal due process rights. Petitioner submits that the Board's <u>sole</u> usage of the initial commitment offense and/or prior social history, on a continual basis to deny him a parole date has violated his 5th and 14th Amendment rights under the United States Constitution to not be deprived of his liberty.

> **"[T]o ensure that a state created parole scheme serves the public interest purposes of rehabilitation and deterrence, the Parole Board must be cognizant not only of the factors required by the state statute to be considered. but also the concepts embodied in the <u>Constitution</u> requiring <u>due process of law</u>... "[Please see e.g. in <u>Greenholtz</u>, 442 U.S. at 7-8.]." (<u>Biggs</u>, supra, 334 F.3d at p. 916)**

> **"The Parole Board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of Parole can be initially justified as fulfilling the requirements set forth by state law. Over time however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, <u>denying him a parole date simply because of the nature of his offense and prior conduct would raise serious questions involving his liberty interest in parole</u>...(Id)**

Petitioner also submits that the Board has adopted an anti and/or no parole policy per se, or a policy of under-inclusion demonstrating a policy of systematic bias; granting only an approximate 232 parole dates out of over 11,000 parole hearings, thus violating the legislative intent of PC § 3041(a) that; "...a parole date <u>shall normally</u> be set in a manner that will provide <u>uniform</u> terms for offenders with crimes of similar gravity and magnitude...". And, violating Petitioner's State and Federal due process rights as well (please see <u>In re Ramirez</u>, supra, at page 565). Petitioner contends that the evidenced behavior by a quasi-judicial Board, of a policy demonstrating an approximate 98.5% denial rate, supports the premise that such a policy exists (i.e. anti and/or no parole policy of under-inclusion or systematic bias): this policy violates the strictures of substantive due process.

1    The existence of said policy in denying parole may explain why the Board only grants

2  parole in less than two (2) percent of the cases it hears; it also explains the bias demonstrated in

3  the present case.

4    In this case, Petitioner's own circumstances, the Board's pronouncement of numerous

5  unlawful conclusions, not supported by the record, violates the process due to Petitioner under

6  the State and Federal Constitutions. Based upon the herein-demonstrated bias, the Board's

7  decision cannot be shielded by the "some evidence" standard. The only appropriate remedy is

8  an independent review.

9    Moreover, two recent California Appellate Court decisions have a direct impact on the

10  review of the instant petition.

11    In **In re Scott**, A108894, California Court of Appeal, First District, Second Division,

12  October 18, 2005, the court found:

13    On July 4, 1986, Scott shot and killed his wife's lover (Bradford) after he found her

14  affectionately hugging him, despite promises to break the affair off. Scott went looking for his

15  wife armed with a .22-caliber handgun and shot the victim two or three times. On July 20,

16  2004, the BPT found Scott suitable for parole. The Governor reverse the Board's finding. The

17  Court ordered Scott released. He is now a free man.

18    The Court wrote, "Except for the present offense, two misdemeanor convictions (for

19  reckless driving and vandalism) arising out of altercations with Bradford and his wife shortly

20  before the crime, and minor Vehicle Code violations when he was a juvenile, Scott has no

21  criminal record.

22    The Governor found Scott unsuitable for parole on the basis of his determination the

23  murder of Bradford was 'especially atrocious' and 'particularly heinous.' According to the

24  Governor, 'the gravity of the murder committed by Mr. Scott alone is sufficient basis on which

25  to conclude that his release from prison at this time would pose an unreasonable public safety

26  risk." The Court found the determination unsupported by "some evidence."

27    The Court sated, "Denial of parole based upon the nature of the offense alone may rise to

28  the level of a due process violation as 'where no circumstances of the offense reasonably could

be considered more aggravated or violent than the minimum necessary to sustain the

1    conviction for that offense. Therefore, an unsuitability determination must be predicated on

2    'some evidence that the particular circumstances of the prisoner's crime – circumstances

3    beyond the minimum elements of his conviction' – indicated exceptional callousness and

4    cruelty with trivial provocation, and thus suggested he remains a danger to public safety."

5        "For example, premeditation was considered in **Rosenkrantz** because, though the prisoner

6    had been convicted of 2nd degree murder, the evidence showed 'a full week of careful

7    preparation, rehearsal and execution,' and that the prisoner 'fired 10 shots at close range from

8    an assault weapon and fired at least three or four shots into the victim's head as he lay on the

9    pavement,' carried out the crime with 'planning, sophistication, or professionalism.'"

10        "Similarly in **In re Lowe**, 130 Cal.App.4th 1405, another 2nd degree murder, the prisoner

11    purchased the gun shortly before the murder, entered the victim's bedroom in the middle of the

12    night while he was asleep, unsuspecting, and in a special relationship of confidence and trust

13    with his killer, 'and shot him five times in the head and chest execution style.'"

14        "In **In re Deluna**, 126 Cal.App. 4th 585, 2nd degree murder again, the petitioner had a

15    physical confrontation with the victim in a bar, left the bar, retrieved a rifle, shot the victim in

16    the mouth and, as the victim bled and walked around the parking lot, followed him and

17    continued firing until he died."

18        "None of these circumstances were present in Scott's case and therefore [his

19    circumstances] cannot be considered more aggravated or violent than the minimum necessary

20    to sustain a conviction of second degree murder." ¯¯          ¯e said of Petitioner's case.

21        In **In re Shaputis**, 2005 DJDAR                    District

22        "In 1987 a jury convicted Shaputi    135                is wi        HC 18007

23    that he used a firearm in the commiss    Cal App 4th     tenc       CR 85491

24    the possibility of parole, plus a determ    217               e fir

25        Shaputis and Irma had been married for 23 years and their relationshi

26    domestic violence. Two years earlier, Irma complained that Shaputis had beaten her and cracked

27    her ribs, and approximately 18 months earlier Shaputis had shot at his wife when they had been

28    drinking and arguing. Shaputis apparently beat Irma at least two or three times per year and had

threatened her with a knife. However, none of these alleged events resulted in criminal charges.

On the night of the murder, Shaputis called 911 around 10:00 p.m. and stated he had fought with his wife and killed her, but claimed it was an accident. The autopsy report concluded Irma was killed sometime between 8:30 p.m. and 12:30 a.m. and her death was caused by a single gunshot wound to the neck. The shot had been fired from close range, possibly as close as two feet, and had entered the neck between the junction of the neck and jaw. Death was apparently instantaneous. Shaputis was a heavy drinker who became violent when intoxicated, and he had been drinking on the night of the murder.

Shaputis minimum eligible parole date was in September 1998. The BPT considered materials presented, including the forensic evaluations, and concluded Shaputis was not suitable for parole because he posed 'an unreasonable risk of danger to society or a threat to the public safety if released from prison.' The BPT cited two findings for this conclusion. First, the BPT found the commitment offense was 'carried out in an especially cruel and/or callous manner' and was 'carried out in a dispassionate and/or calculated manner' because the murder was committed at close range with a single shot. Second, the BPT found Shaputis had a 'history of unstable and tremulous [sic] relationships with others' and had assaulted his wife.

The Court ruled that the BPT cannot rely on the bare conviction for 2nd degree murder to deny parole under the exceptionally callous or cruel factor. Because the relevant evidence shows no conduct (beyond the minimum required for conviction of 2nd degree murder) showing a callous disregard for human suffering, the BPT's use of this factor was arbitrary and capricious. (Scott, 119 Cal.App. at 891-892)

The BPT's finding that Shaputis acted in a dispassionate and calculated manner, in addition to being inconsistent with the jury's verdict acquitting him of first degree murder, is unsupported by (and indeed may be irreconcilable with) the evidence on which BPT purported to rely. Accordingly, the BPT's reliance on this factor was arbitrary and capricious.

In the present case, we conclude the record contains no evidence to support the BPT's articulated reasons for denying parole, and there is nothing in the record to suggest the BPT would have determined Shaputis posed an unreasonable risk of danger to society without the reasons we have found are unsupported by the record. Shaputis petition for writ of habeas corpus is granted."

1    The Court will note that the facts of this case and the findings of the BPT in Petitioner's

2    writ are similar in  most respects. An independent review of the record clearly

3    demonstrates that, as in Shaputis, the BPT findings in the instant case were also arbitrary

4    and capricious in violation of due process. The offense itself cannot support a finding of

5    unsuitability.

6    //

7    //

8    //

**PETITIONER'S RIGHT TO HAVE SEPARATELY STATED AND SPECIFICALLY DIRECTED (SEPARATE AND DISTINCT) REASONS WHEN GIVEN A MULTI-YEAR DENIAL WAS NOT PROTECTED BY THE BPT IN VIOLATION OF HIS STATE AND FEDERAL CONSTITUTIONAL DUE PROCESS PROTECTIONS AND CONTRADICTORY OF THE LEGISLATIVE INTENT OF PENAL CODE § 3041.5(b)(2).**

Petitioner's initial hearing was scheduled for August 23, 1999. However, it was not actually held until December 14, 1999. Almost four (4) months late. At that hearing, Petitioner received a three (3) year denial. A multi-year separate and distinct set of reasons was given by the Board. Petitioner's first subsequent parole consideration hearing should have taken place on December 14, 2002. It actually took place on December 12, 2002. Petitioner received a one (1) year denial. His next scheduled hearing should have been on December 12, 2003. It did not take place until May 18, 2004, some five (5) months late. Again, Petitioner received a one (1) year denial. Petitioner's next scheduled hearing should have been on May 18, 2005. It was not held until December 6, 2005, close to seven (7) months late. This time inexplicably Petitioner received a three (3) year denial. The Board did not give a separate and distinct reason for this drastic departure. Moreover, no consideration was given to the sixteen (16) months of unexplainable delays on the part of the Board. (See Exhibit "C")

1. The statement of reasons for a multi-year denial must be a separate and distinct statement that is not a mere recital of the same reasons used to deny parole worded slightly differently.

2. In denying Petitioner parole for a period of two (3) years, the BPT failed to cite separate and distinct reasons for a multi-year denial.

3. The BPT's stated reason for parole denial was:

   "The offense in this case was particularly cruel and callous absolutely no motive. It was certainly carried out in a dispassionate manner." (Exhibit 'A' p. 98)

4.  In the same breath, the BPT continued with its rationalization for a now multi-year

denial. The Board states:

a) The Board: "We have a problem with minimalization ..." (HT-99) Compare this

with Petitioner's statement: "I am not running away from my actions. I am taking full

responsibility for what I did." (HT-88: 11-12)

b) The Board: "He appears to be attempting to word smith this crime by changes his

description of this from accidental to unintentional act ... downsizing words." (HT-99)

Compare this with Petitioner's actual statement after the Commissioner read the

summary of the crime: "The only thing that I would want to clarify in regards to what

you read there ... as to not confuse anyone here is that in the past ... I've had a little

problem with the use of the word accident, and I just want to make it clear to the panel,

sir, that accidental shooting was my legal defense ... I've always maintained ... the

shooting was the result of an unintentional act." (HT-18: 20-27)

c) The Board: "Not taking responsibility for this particular crime." (HT-100) Compare

with a) above, Psych Report, Counselor's Report, Laudatory Chronos from work

supervisors, Anger Management, and over 15 years of extensive therapy.

d) The Board: "His dishonesty to his wife Cathleen ... that he did not told Cathleen that

Ms. Hall was part of his plan." (HT-100) Compare this with Petitioner's statement:

"The parole plan remains the same ... I would like to go live with her (Cathleen) if I'm

found suitable for parole. However, during one of my previous hearings, the

Commissioner stated ... I would have to have parole plans for San Diego, because of

that I contacted my dear friend Rosie Hall ..." (HT-26: 12-27) [as an alternative]. What

is most interesting about the Board's statement here is that it unreasonably expects

Petitioner's wife to leave her home and community in Morro Bay and establish

residence in San Diego for Petitioner's sake even though she has no idea when

Petitioner is coming home. (HT-103: 16-20) Incredibly, while criticizing, [and

apparently rejecting], Petitioner for presenting Ms. Hall of San Diego as an alternative

plan, the Board insists that – "We would like to see an alternative plan particularly San

Diego." (HT-103: 15-16)  -- completely disregarding the parole plans presented.

5. A multi-year denial can only be applicable when valid grounds exist to find Petitioner unsuitable for parole. Petitioner has adequately established in his argument ante that the BPT's reasoning for denying parole was unsubstantiated, lacking even "some evidence" that he is <u>CURRENTLY</u> an unreasonable risk to the public and was therefore arbitrary, capricious, lacked basis in fact, and/or was contrary to law. All of the above statements are refuted by a complete reading of the record, the reports submitted, Petitioner's statements at the hearing and by existing rules, regulations and laws.

**Supporting cases:**

"If the Legislature had intended a single statement of reasons to suffice for both the refusal to set a parole date and the decision to postpone annual review, it would not have enacted language specifically calling for a statement of reasons on the latter...Accordingly, this Court holds the Board to the Legislative requirement that its reasons for postponing a suitability hearing be separately stated and specifically directed to that question." <u>In re Jackson</u>, (1985) 39 Cal.App.3d 464

Penal Code § 3041.5(b)(2) that requires a separate and distinct statement that is not a mere recital of the same reasons used to deny parole worded slightly differently.

Penal Code § 5076.2

CCR § 2000(b) (48) [Good Cause]; (61) [Material Evidence]; [Relevant Evidence]

CCR § 2400 et seq.

California Constitution Article I §§ 7, 15 [Due Process]

U.S. Constitution Amendment 14 [Due Process]

<u>In re Capistran</u>, (2003) 107 Cal.App.4[th] 1299

<u>In re Morrall</u>, 102 Cal.App.4[th] 280

<u>In re Rosenkrantz</u>, 95 Cal.App.4[th] 358

<u>In re Ramirez</u>, 94 Cal.App.4[th] 549

<u>In re Caswell</u>, (10/10/01) 92 Cal.App.4[th] 1017

<u>In re Rodriguez</u>, (1975) 14 C.3d 639

<u>California v. Morales</u>, (1975) 115 S.Ct. 1597

//

1

2                              **CONCLUSION**

3      The Board's decision was arbitrary and capricious. The Petitioner did not receive a fair

4  hearing, nor will he ever.

5      Petitioner submits and contends that the finding of unsuitability was arbitrary and

6  capricious:

7      1). Due to the Board carrying out it's political function of adhering to a no or anti-parole

8          policy;

9      2). Due to the Board's acting contrary to the intent and spirit of PC § 3041 (a);

10     3). Due to basing its decisions on unsupported allegations and a retrying of the case; and

11     4). Due to the Board's refusal to adhere to aforementioned decisions and the controlling

12         authorities.

13     It appears the Board is holding Petitioner to hire standard because of his previous

14  employment with the Marines and the City of San Diego. Petitioner seeks refuge under the

15  U.S. Constitution's 14th Amendment "equal protection" clause and this Court's opinion **in In**

16  **re Shaputis**. It is inconceivable that the Board routinely finds habitual offenders suitable for

17  parole, but not a person with Petitioner's outstanding record.

18     Petitioner prays this Court order him released and /or discharged, or at the very least, direct

19  the Board to issue a decision within ten (10) days granting parole, setting his term "uniformly"

20  as mandated by the legislature.

21  //

22  //

23  //

24

25

26

27

28

## PRAYER FOR RELIEF

1. Issue an Order to Show Cause on an expedited basis.

2. Appoint Counsel.

3. Conduct an Evidentiary Hearing.

4. Order Petitioner's appearance before the Court.

5. Order Petitioner taken back before the Board for a finding of suitability within ten (10) days, or in the alternative, order Petitioner released forthwith;

6. Declaratory relief, and

7. Any other relief this Court deems fair, just and appropriate.

**PROOF OF SERVICE**

I declare that:

I, PABLO AGRIO, E-17284, am a resident of the State of California, County of Monterey. I am over 18 years of age and I am a party to the within action. My residence address is P.O. Box 689, Soledad, California, 93960-0689.

On February ___ 2006 I served the foregoing Reply to Respondent's Informal Response on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage fully prepaid in the United States mail at Soledad, California, addressed as follows:

SUPERIOR COURT OF SAN DIEGO
State of California
220 W. Broadway
San Diego, CA 92101-3409

DEPUTY ATTORNEY GENERAL
DARRELL LEPKOWSKY
110 WEST A STREET, SUITE 1100
San Diego, CA 92186-5266

There is regular delivery service by the U.S. Postal Service between the place of mailing and the places so addressed.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this ___ day of February ___, 2006, at Soledad, California.

PABLO AGRIO